C. A. FRITTS, doing business as the PARK CITY REALTY CO. v.
J. A. GRANT and MRS. J. A. GRANT.

Eastern Section.    May 25, 1927.

No petition for Certiorari was filed.

1.  Trial.  The warrant controls the possible issues in a law suit.
    Where the defendant was summoned to answer a complaint of debt
due by account, held that the suit could not be maintained on a check given
for the account as such, but the check was only evidence of the account.

2.  Principal and agent.  A real estate agent employed to sell a house can
    not claim an agency to repurchase it.
    Where plaintiff was employed by defendants to sell their house for a
certain commission and after he had sold the same, defendants wanted to
avoid the contract and went to him to get their deed returned and paid to
him $500 for the return of their deed, held that the agent could not claim that
he was entitled to a commission for repurchasing the house for them.

3.  Brokers.  Principal may terminate agency for sale of house.
    In an action to recover commission for the sale of a house, where
the defendant breached the contract and terminated the agency, held that
plaintiff's remedy was one for damages and not in debt.

Appeal from Circuit Court, Knox County: Hon. A. C. Grimm,
Judge.
Affirmed.
Hobart Atkins, of Knoxville, for appellant.
Fred Bibb, of Knoxville, for appellee.

SNODGRASS, J.  This is a suit to collect an account, alleged to be
under five hundred dollars.  It was instituted before a Justice of the
Peace, who on the trial gave judgment against the defendants for
the sum of $500, and the defendants appealed.  The case was
heard before the circuit court without the intervention of a jury,
where the plaintiff recovered a judgment for only $250, the Circuit
Judge also dividing the costs, adjudging one-half against the plain-
tiff and his securities, and the other one-half against the defendants.
The plaintiff, being dissatisfied with this judgment and thinking him-

self entitled to the full amount that the Justice of the Peace gave him, has appealed to this court and assigned the following as errors:

"1. The court erred in rendering a judgment for the sum of $250 only in favor of the plaintiff and against the defendants, because the evidence does not sustain a judgment for that amount only but warrants a judgment in favor of the plaintiff and against said defendants for the sum of $500."

"2. The Circuit Judge erred in refusing to enter judgment in favor of the plaintiff and against the defendants for the sum of $500 and in entering judgment in favor of the plaintiff for the sum of $250 only, because the suit was based upon a check given for the sum of $500 by the defendants to the plaintiff, and the evidence shows that said check was given for value and that the defendants received full value therefor, and the evidence further shows that the plaintiff was a holder in due course and for value of said check, and that the defendants had no right to stop the payment thereof, and that it was given in settlement of a matter involved in controversy between the parties at the time and the plaintiff was a holder in due course."

This suit simply involves an account as to what is due the plaintiff as commission, or for alleged services rendered. The plaintiff is a real estate dealer and as such sold a house and lot for the defendants to one Snodderly and wife, and was entitled to commission for services in this transaction, for which defendants became indebted in the sum of $250, as that trade was completed and the commission earned in the transaction. Before settlement, however, the defendants became dissatisfied with having sold their house and began negotiations to become repossessed of it.

As the plaintiff received $250 below, and as his appeal and assignment of error only calls in question the refusal of the court to allow him $250 additional, making in all the sum of $500, the question here is, is there any evidence justifying or supporting the Circuit Judge in such refusal? We think there is. In the first place the plaintiff's own proof under the pleadings did not show him entitled to more than he recovered. The treatment of the case by him has been as though this was a suit upon a check for $500, regarding which it is said the plaintiff is the holder in due course. But this is not the case. The $500 check has figured in the deal between these parties, but is only important to be considered for whatever evidential value it possesses in the case. In the warrant, which controls the possible issues in the lawsuit, the defendants were summoned to "answer the complaint of C. A. Fritts in a plea of debt due by account under $500." The testimony of the defendants was, and is, that they owned the property, the house and lot sold to Mr. Snodderly and wife; that they had listed it with Mr. Fritts some time about the latter part of March, 1926 for a period of ninety days; that they instructed him to sell it

6 T. A.—29.

for $5,000; that it was sold through him, and that a warranty deed was executed by them and turned over to Mr. Fritts to deliver to Mr. Snodderly and wife; that they never had received the cash payment, notes or trust deed, but in a few days Mrs. Grant went back to Fritts' office and demanded her papers; that Mr. Fritts told her he did not have the papers; that he had turned them over to Mr. Snodderly; that she then got in touch with Mr. Snodderly, and was told to see Mr. Fritts; that Snodderly stated he would not discuss the matter with her, that he was going to deal with Mr. Fritts; that she went to Mr. Fritts' office on the evening of June 17, 1926, and Mr. Fritts told her he would give her the papers if she would give him $500; that for that reason she gave him the check for $500; that Mr. Fritts did not tell her that $250 of this $500 was to pay Mr. Snodderly; that she thought his commission was $500, and that after giving the check for $500 she learned that his commission was only $250, and it was for that reason she stopped payment on the check; that Mr. Fritts refused to give her back the deed that she and her husband executed to Mr. Snodderly until she delivered to him the check for $500, and that thereupon Mr. Fritts returned the warranty deed to her defaced; (which deed Mrs. Grant offered in evidence in this cause and which was filed as exhibit to her testimony and sent up as an original with the transcript) that she did stop the payment of the $500 check at the bank; that she did not authorize the payment of the $250 to Snodderly by Fritts or any one else.

J. A. Grant testified that they owned the property; that they negotiated with Mr. Fritts to sell it for them; that he did not go with his wife to make the settlement with Mr. Fritts, but that he did go with her to execute the deed, and that they never received the trust deed nor the notes from Mr. Fritts, nor the cash payment; that he did not authorize Mr. Fritts to pay the $250 to Snodderly; that he and his wife since the commencement of this suit have sold the property to other parties; that he did not authorize the payment of $250 or any other amount to Snodderly by Fritts or any one else.

It is apparent from this testimony that the judgment of the circuit court will have to be affirmed. Agency to effect a repurchase for the defendants by the plaintiff was denied. It appears that the defendants after placing the papers in the hands of the plaintiff, their then agent, to complete the sale by delivering to Snodderly the deed and receiving for them the cash payment, mortgage and notes, became dissatisfied and sought to arrest it by a return of the papers, which evidently they had been told by their attorney could be done by mutilation and return of the deed simply. This of course could have been done before its delivery to defendants' vendees. They were told that the plaintiff had turned the papers over to Mr. Snodderly. This ended the agency of the first transaction except to turn over to defend-

ants the proceeds of the sale, after retaining his commission, which he says was to have been $250. Defendants say he never did turn over the papers. This is not important, however, because the delivery of the cash, or its agreed equivalent, the notes and the mortgage to the plaintiff, their agent, was a delivery to the defendants. And so it thus appears that the original transaction in which the $250 was earned had been completed, though it appears both before ascertaining the deed had been delivered and afterwards defendants were under the impression that the trade could be recanted in the manner mentioned. And so when she went Mrs. Grant was directed to the plaintiff, who it appears was rather the agent of the Snodderlys in this latter effort. She says she went to Fritts' office on the evening of June 17, 1926, when Mr. Fritts told her he would give her the papers if she would give him $500, and that it was for this reason i. e., the return of the papers, that she gave him the check, and Mr. Fritts told her that $250 of the amount was to go to Snodderly. Both she and her husband denied that they gave him any such commission to so do. Mrs. Grant testifies further that she thought it was for commission, and that after giving the check she learned his commission was only to be $250, and that it was for that reason she stopped payment on the check. This was a sufficient reason, and the court was authorized to credit it. But take it for granted that she gave him the check merely for the return of the papers, as insisted, such a transaction under the circumstances would bind no one, and she was authorized at least, before becoming invested with the title, to repudiate the transaction and stop payment on the check. From defendants' proof plaintiff can not claim any agency for them to purchase from the Snodderlys, or to make or engage any payment to him for them.

From plaintiff's own statement he admits he had notice that defendants had repudiated the transaction by stopping payment on the check before he made the payment of $250 to Snodderly and wife. This payment must have been made under the idea that he was acting as agent for the defendants and as such had made an authorized contract, which he was authorized against their will to complete. This is further indicated by the fact that he afterwards procured a quit claim deed from the Snodderlys to defendants, which he tenders with his defense. If he was ever in possession of such agency to make a contract, it was terminated by the breach of such contract in the stoppage of the payment on the check. If such a commission ever existed, which is denied by the defendants, defendants before completion had the right to breach the contract, which breach would terminate the agency; and if plaintiff lost anything of value, his remedy would sound in damages and not in debt. He can not by tendering a deed from the proposed vendor change the character of the relationship and recover in debt as upon specific performance of the contract. Neither can he recover upon the quantum meruit for

services rendered before the repudiation of the alleged purchase. Both defendants testified, in effect if not directly, that he had no agency from them. Mr. Snodderly, introduced by the plaintiff, testifies in effect that the plaintiff was acting for him.

Defendants have filed no reply brief. Mr. Grant states that they have since sold the property to others. Having declined the quit claim deed, it would appear that the title to the property is in the Snodderlys. In what complications this subsequent sale of it may involve them does not appear. This question, of course, is one for their consideration. They do not appeal, and we have no commission or agency to tinker with the title. Our agency simply is to give effect to the sentence of the law from the facts involved under the practice of this court. The assignments of error are overruled, and the judgment of the lower court affirmed, with costs against appellant and his security.

Portrum and Thompson, JJ., concur.